[Cite as *State v. White*, 2017-Ohio-8087.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : Case No. 16CA3747

    vs. :

SILVON X. WHITE, : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant. :

_____

APPEARANCES:

John A. Gambill, Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Joe Hale, Scioto County Assistant
Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-25-17
ABELE, J.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction

and sentence. Silvon White, defendant below and appellant herein, assigns the following error for

review:

> ASSIGNMENT OF ERROR:
>
> "THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO
> CONVICT APPELLANT OF TRAFFICKING IN HEROIN: OR, IN THE
> ALTERNATIVE, THE CONVICTIONS WERE AGAINST THE
> MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 2} On March 29, 2016, the grand jury returned an indictment that charged appellant with

(1) one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(e), and (2) one count of trafficking in heroin in violation of R.C. 2925.03(A)(2) & (C)(6)(f), both felonies of the second degree.

{¶ 3}   At trial, Ohio State Highway Patrol Trooper Michael Ervin testified that after he arrived at an accident on August 5, 2015, he found one female and two males standing next to a van with Florida license plates with a blown tire and deployed airbags.   After placing one male and one female at the rear bumper of their car directly in front of his cruiser, Trooper Ervin questioned the driver, Anthony Mays.   Mays stated that he and Amber Adkins had gone to the Greyhound Bus Station in Columbus to pick up appellant.   However, Mays claimed that he did not know appellant's name and that he did not know who had rented the vehicle.

{¶ 4}   After further questioning, Mays admitted to the trooper that Adkins had drugs on or around her.   When the trooper asked "well, why is she holding? Why ain't he [appellant] holding," Mays replied "I guess he's got to have an escape [sic] goat."   When asked "tell me how you know she's holding that," Mays replied "because after the crash everybody was freaked out."   When asked, "who had the dope prior to the crash," Mays replied "Amber had it."   When asked where Amber had it, Mays replied "I'll give you two guesses, but you only need one."   Shortly thereafter, Trooper Ervin saw Adkins, who was outside of the car, "turn real quick and I saw her arms go up."

{¶ 5}   When Trooper Ervin questioned Adkins, Adkins initially stated that Mays is her boyfriend and that they were returning from Detroit.   She later admitted, however, that Mays is not her boyfriend, and noted that like Mays, she did not know appellant's name and only knew him as "Fifty."   Like Mays, Amber did not know who rented the vehicle and stated that she did not know whose idea it was for she and Mays to pick "Fifty" up in Detroit.   When Trooper Ervin asked her about the drugs, Adkins admitted that she previously concealed the drugs on her body, but had

thrown the drugs away from the van while Trooper Ervin spoke with Mays.

{¶ 6} Ohio State Highway Patrol Trooper Nick Lewis, who arrived at the scene while Trooper Ervin questioned the three co-defendants, testified that he walked about eight feet from the passenger door of the rental van and found a cylindrical package about the size of a hot dog, wrapped in black electrical tape and condoms. He further testified, that "once we took it back to the post and outside of all packaging it weighed 54 grams and it was heroin." A criminalist in the Drug Chemistry Department with the Patrol Crime Lab testified that she tested the substance recovered at the accident scene and found it to contain heroin. Also, the package weighed 49.315 grams, plus or minus .012 grams.

{¶ 7} When Trooper Ervin first began to question appellant, Ervin mentioned to a paramedic who had just arrived on the scene that "He's going to be locked up," referring to appellant. Appellant responded: "What am I getting locked up for? That's not my sh*t. Not my sh*t. My DNA ain't on that damn thing." Later appellant stated "[w]here the f**k was the dope at? I ain't seen no dope. I know you ain't seen sh*t." Appellant then stated to Amber, while they were placed in the back of the patrol car, "Don't say nothing in this car."

{¶ 8} Adkins, who pled guilty, testified at appellant's trial that she and Mays had driven to Detroit to pick up appellant and the "dope." Adkins was expected to transport the drugs on, or in, her body. In exchange, she would also receive a portion of the drugs or money. Adkins noted that August 5 was not the first time she had seen appellant. She stated that when she arrived in Detroit, while Mays stayed in the van, she "got out the van, walked in the house and stuffed the dope." When asked "did he tell you to stuff it," Adkins replied "Yes, sir." When asked what that means, Adkins replied "[t]o stick it in my private area." Adkins stated that she was unable to "stuff" the

heroin because the package was too large.  She said she and appellant got into the van with Mays and headed back to Portsmouth.  Adkins also testified that when the accident occurred, she and Mays wanted to "get rid of it [the drugs]," but appellant did not.

{¶ 9}   Mays, who also pled guilty, testified that on the morning of August 5, he picked up Adkins and the rental van from a guy he knew as "Unk."   After getting gas, he and Adkins drove to Detroit to pick up Unk's nephew.  Mays testified that he did not know who it   was (Unk's nephew) until he got there and learned that it was the appellant, who Mays had seen in Portsmouth once before.

{¶ 10} Mays explained that during the return drive to Portsmouth, he became tired and ran off the road.  Mays also testified that he knew that when they left Detroit with appellant, the van contained a controlled substance.  Mays stated that in exchange for driving from Portsmouth to Detroit to pick up defendant and the drugs, he would receive two and a half grams of the heroin and $100.

{¶ 11} After hearing the evidence, the jury found appellant guilty of both possession and trafficking in heroin.   The trial court sentenced appellant to serve six years in prison and three years of postrelease control.   This appeal followed.

{¶ 12} In his sole assignment of error, appellant asserts that (1) the evidence is insufficient as a matter of law to convict him of trafficking in heroin and (2) the convictions are against the manifest weight of the evidence.   In particular, appellant makes two arguments, one regarding whether he exercised dominion and control over the package of heroin, and one regarding the amount of the heroin in the package.

*Standard of Review*

{¶ 13} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Taylor*, 4th Dist. Ross No. 13CA3419, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 27, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Thus, the standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Taylor* at ¶ 27, citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. Thus, a reviewing court will not overturn a conviction for insufficient evidence unless "reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001).

{¶ 14} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Hunter*, 131 Ohio ST.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which

the evidence weighs heavily against the conviction.'" *Thompkins*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1stDist.1983); *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 15} As this court noted in *Taylor*, "[i]t is important to recognize that when an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *Taylor* at ¶ 32, citing *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15. Therefore, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Taylor*, citing *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶ 9.

*Trafficking and Possession*

{¶ 16} In the case sub judice, appellant was convicted of trafficking in heroin in violation of R.C. 2925.03(A)(2)/(C)(6)(f) and possession of heroin in violation of R.C. 2925.11(A)/(C)(6)(e). R.C. 2925.03(A)(2) states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant contends that the evidence did not show that he knowingly possessed the drugs discovered in the vehicle.

{¶ 17} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.

2901.22(B). R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998); *accord State v. Corson*, 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 13.

{¶ 18} Possession may be actual or constructive. *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989). "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39.

{¶ 19} Because the heroin in the case at bar was not found on appellant's person, the state had to prove that appellant constructively possessed it. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91, 434 N.E.2d 1362; *Kingsland* at ¶ 13. Generally, constructive possession may be proved by circumstantial evidence alone. See *Taylor* at ¶ 35, citing *Brown* at ¶ 19. See also *State v. Dues*, 8th Dist. Cuyahoga No. 100861, 2014-Ohio-5276, ¶ 22. Further, this court has said: "Although a defendant's mere proximity is in itself insufficient to

establish constructive possession, proximity to the object may constitute some evidence of constructive possession.   [*State v.*] *Fry*, [4th Dist. Jackson No. 03CA26, 2004-Ohio-5747,] at ¶ 40. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Kingsland* at ¶ 13.

{¶ 20} In the case sub judice, the parties do not dispute that the substance recovered near the rental van, in which the appellant was a passenger, was heroin.   Rather, appellant argues that the state failed to present sufficient evidence to establish that appellant knowingly possessed, by means of constructive possession, the heroin discovered near the van.   Appellant contends that the state's evidence that appellant told Adkins to "stuff" the heroin, when Adkins and Mays picked him up in Detroit, is insufficient to establish dominion and control because the package of heroin was too large for Adkins to be able to comply with appellant's direction.   Appellant also argues that the state failed to cite any testimony that appellant told Adkins to dispose of the heroin.

{¶ 21} In support of his position, appellant cites *State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, wherein this court found that although the state presented evidence from which the trial court could reasonably conclude that appellant knew the heroin was in the van, the state failed to show that Criswell ever had the ability to exert dominion or control over the heroin.   In *Criswell*, we concluded that no evidence indicated that Criswell, a passenger in the vehicle, ever had access to the drugs in question.

{¶ 22} This case, however, presents a very different set of facts.   Although appellant did not own or drive the vehicle, we believe that the evidence adduced at trial established that appellant exerted dominion and control over the heroin.   Both Adkins and Mays testified that the appellant

gave the heroin to Adkins to "hold." Adkins testified that when she and Mays arrived at the Detroit drug house, she entered and met appellant, who gave her the heroin and told her to "stuff it," which she explained meant to "stick it in my private area." Regardless of whether Adkins was physically able to comply with this specific directive, Adkins, at appellant's direction, had the heroin on her person during the trip from Detroit to Portsmouth.

{¶ 23} Appellant also cites *State v. Cola*, 77 Ohio App.3d 448, 602 N.E.2d 730 (11th Dist.1991) to support his argument that a defendant's mere presence in an area where drugs or other contraband are located is insufficient to demonstrate that the defendant constructively possessed the drugs. However, we again point out that the instant case presents more than mere presence. Here, two witnesses testified that appellant gave the heroin to Adkins, who acted as a drug mule, and told her to transport the drugs. In addition, the jury observed the dash camera and cruiser audio/video recordings of the witnesses at the scene while they stated the same information. Thus, we believe that the case sub judice presents facts far beyond "mere presence."

{¶ 24} Finally, appellant cites to *Cincinnati v. McCartney*, 30 Ohio App.2d 45, 281 N.E.2d 855 (1st Dist.1971), in which the defendant was found not to possess marijuana when he sat six feet from a growing marijuana plant in an apartment that he did not own. We, however, observe that *McCartney* involved a dwelling rather than a motor vehicle, and that the record showed that the only testimony concerning the connection between McCartney and the marijuana plant is that (1) McCartntey was seated close to the plants when officers entered the apartment, and (2) an unidentified person in the apartment told the officers that all of the people present helped tend the plants. Again, we find *McCartney* to be distinguishable.

{¶ 25} In summary, we believe, after our review of the record, that the case sub judice is not

a situation in which an unsuspecting passenger had the unfortunate luck of finding himself in the presence of contraband and being convicted of possession simply based upon that presence alone. As we noted above, appellant's presence, coupled with two witnesses who testified to facts that established appellant's dominion and control, support the trier of fact's finding that appellant constructively possessed the heroin. Contrary to appellant's assertions, our review reveals that ample competent, credible evidence supports the jury's determination that appellant constructively possessed the heroin found near the rental van in which appellant was a passenger. Thus, we conclude that sufficient evidence supports the trial court's judgment and that the judgment is not against the manifest weight of the evidence.

*Quantity of heroin*

{¶ 26} In addition, appellant argues that the record is devoid of sufficient evidence to prove that the actual amount of heroin contained within the substance that was weighed is equal to, or greater than, 10 grams. Thus, he argues that he may only be convicted under R.C. 2925.03(A)(1)/(C)(6)(a) and R.C. 2925.11(A)/(C)(6)(1) as felonies of the fifth degree.

{¶ 27} Both the drug possession and the drug trafficking penalty enhancement provisions require that, for a second degree felony, the state must prove that the quantity of heroin "equals or exceeds ten grams but is less than fifty grams." To prove that the heroin weighed ten or more grams, the state presented the testimony of Crystal Soles, a criminalist in the Drug Chemistry Department with the Ohio State Highway Patrol Crime Lab. Soles testified that she tested the substance and found it to contain heroin weighing 49.315 grams, plus or minus, .012 grams, as noted on State's Exhibit 3.

{¶ 28} Appellant cites to this court's decision in *State v. Spencer*, 4th Dist. Scioto No. 15CA3718, 2017-Ohio-456, to support his argument that a rational trier of fact could not have concluded, beyond a reasonable doubt, that the weight of the heroin alone equaled or exceeded ten grams. However, *Spencer* involved a case in which the lab supervisor testified that she could not remove all of the plastic wrapping from the heroin because the heroin was so sticky, and the weight of the heroin and the plastic was 10.5 grams. *Spencer* at ¶ 46. This court concluded that no evidence existed concerning the relative weight of heroin to plastic. Here, however, the weight of the heroin is 49.315 grams, well over the ten gram minimum. Moreover, no evidence was adduced at trial regarding packaging or any other substance that affected the weight of the heroin as in *Spencer*.

{¶ 29} Appellant also cites *State v. Gonzales*, _ Ohio St.3d _, 2016-Ohio-8319, _ N.E.3d _ in support of his argument. In *Gonzales I*, the Supreme Court of Ohio held that the offense level for possession of cocaine should be determined only by the weight of the actual cocaine, not by the total weight of the cocaine plus any filler. *Id.* at ¶ 22. However, the Supreme Court of Ohio later granted reconsideration and, in *Gonzales II*, the court held that "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." Thus, the court vacated its decision in *Gonzales I*. *See State v. Gonzales*, _ Ohio St.3d _, 2017-Ohio-777, _ N.E.3d _, ¶ 3. Moreover, *Gonzales* involved statutory language specific to cocaine. *See Spencer*, footnote 1.

{¶ 30} Therefore, after our review we conclude that ample competent, credible evidence exists to establish that appellant possessed heroin in violation of R.C. 2925.11(A)(C)(6)(e) and

trafficked in heroin in violation of R.C. 2925.03(A)(3)(2) and (C)(6)(f).

{¶ 31} Accordingly, based upon the foregoing reasons we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment is affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.   Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.