[Cite as *State v. Daniels*, 2020-Ohio-1176.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 17AP0036 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES T. DANIELS | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2017 CRC-I 000237 |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2020

TEODOSIO, Presiding Judge.

{¶1} Appellant, Charles T. Daniels, appeals from his convictions in the Wayne County Court of Common Pleas. We affirm.

I.

{¶2} A police investigation into the trafficking of heroin and fentanyl in Wayne County led police to the Econo Lodge in Wooster as a location frequently used for drug trafficking. Officers conducted surveillance and obtained a search warrant for Econo Lodge rooms 129 and 143. Upon execution of the search warrant, Mr. Daniels and two females were found in one room, while three females and a cache of illicit drugs were found in the other. Two of the females testified at trial that they were selling drugs out of the motel room for Mr. Daniels.

{¶3} Mr. Daniels was charged with trafficking in heroin, aggravated trafficking in drugs (fentanyl), possession of heroin, aggravated possession of drugs (fentanyl), and illegal use or

possession of drug paraphernalia. After a jury trial, he was found guilty on all counts. The trial court sentenced him to a mandatory term of eight years in prison.

{¶4} Mr. Daniels now appeals from his convictions and raises eight assignments of error for this Court's review. We have reorganized and consolidated some of his assignments of error to facilitate our review.

## II.

{¶5} We first note that Mr. Daniels has proceeded with his appeal and filed his merit brief pro se. As to pro se litigants, this Court has previously stated:

> [P]ro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

*State v. Goldshtein*, 9th Dist. Summit No. 25700, 2012-Ohio-246, ¶ 6, quoting *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, ¶ 3. Although we find Mr. Daniels' merit brief to be somewhat inartfully drafted, we determine that it is sufficiently compliant with App.R. 16 and Loc.R. 7 to enable this Court to perform meaningful appellate review. We now turn to the merits of his appeal.

### ASSIGNMENT OF ERROR FOUR

SUFFICIENCY OF THE EVIDENCE: CAN A VERDICT OF GUILTY BE ALLOWED TO REMAIN WHEN IT IS NOT SUFFICIENT TO SUPPORT THE CONVICTION(S)?

### ASSIGNMENT OF ERROR EIGHT

TRIAL COURT CHARGED 2ND DEGREE FELONIES FOR THE DRUG OFFENSES BASED ON THE AMOUNTS EXCEEDING 10-GRAMS. * * * THE RECORD CONCLUDES THAT THE FACTUAL DRUG AMOUNTS WERE

LESS THAN 10-GRAMS. CAN A CONVICTION BE ALLOWED TO STAND WHEN THE TRIAL COURT RECORD DETAILS THE ERROR?

{¶6} In his fourth and eighth assignments of error, Mr. Daniels argues that his convictions are based on insufficient evidence. We disagree.

{¶7} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8} Mr. Daniels was convicted of one count of trafficking in heroin and two counts of aggravated trafficking in drugs (fentanyl) under R.C. 2925.03(A)(2), which states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." *See also* R.C. 2925.03(C)(6)(e); Former R.C. 2925.03(C)(1)(c)-(d).[1] "A person acts

_____

[1] At the time of Mr. Daniels' case in 2017, trafficking in fentanyl was charged simply as aggravated trafficking in drugs, and the degree of the offense was determined under Former R.C. 2925.03(C)(1). Although irrelevant to this appeal, the statute has since been amended several times, and the degree of the offense "trafficking in fentanyl-related compounds" is now determined under R.C. 2925.03(C)(9).

knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Both heroin and fentanyl are controlled substances. *See* R.C. 3719.01(C); R.C. 3719.41, Schedule I (B)(11) and Schedule II (B)(9).

{¶9} He was also convicted of possession of heroin and aggravated possession of drugs (fentanyl) under R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance * * *." *See also* R.C. 2925.11(C)(6)(d); Former R.C. 2925.11(C)(1)(c).[2] "'Possess' or 'possession' means having control over a thing or substance * * *." R.C. 2925.01(K).

{¶10} Mr. Daniels was also convicted of illegal use or possession of drug paraphernalia under R.C. 2925.14(C)(1), which states: "[N]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." "[D]rug paraphernalia" includes "any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in * * * preparing, * * * inhaling, or otherwise introducing into the human body, a controlled substance * * *[,]" such as a spoon or a pipe. R.C. 2925.14(A)(9) and (13).

{¶11} "'One cannot escape criminal liability by acting through agents.'" *State v. Jenkins*, 9th Dist. Summit No. 28736, 2018-Ohio-4814, ¶ 10, quoting *State v. Williams*, 117 Ohio App.3d 488, 493 (1st Dist.1996). The trial court therefore instructed the jury on complicity in this case. *See* R.C. 2923.03(A)(1)-(2) ("No person, acting with the kind of culpability required for the commission of an offense, shall * * * [s]olicit or procure another to commit the offense [or aid] or abet another in committing the offense * * *."). The Supreme Court of Ohio has stated that "a

---

[2] At the time of Mr. Daniels' case in 2017, possession of fentanyl was charged simply as aggravated possession of drugs, and the degree of the offense was determined under Former R.C. 2925.11(C)(1). Although irrelevant to this appeal, the statute has since been amended several times, and the degree of the offense "possession of a fentanyl-related compound" is now determined under R.C. 2925.11(C)(11).

defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment * * * does not mention complicity." *State v. Herring*, 94 Ohio St.3d 246, 251 (2002).

{¶12} Mr. Daniels argues that the State failed to present sufficient evidence that he trafficked or possessed illegal drugs. However, our review of the record reveals that the State presented a wealth of evidence against Mr. Daniels at trial. Officer Quinn McConnell of the Wooster Police Department ("WPD") and Medway Drug Enforcement Agency ("Medway") testified that he was primarily in charge of the investigation. He testified that sometime in January of 2017, police learned that Mr. Daniels was known by the street name "Quick." During a traffic stop on April 4, 2017, Officer McConnell learned that possible drug activity was occurring at the Econo Lodge in Wooster. The front passenger of the stopped vehicle had heroin on his person, and gave Officer McConnell a phone number he used to call for drugs. Officer Gaetano "Guy" Bremenour of the WPD and Medway also testified that he received tips Mr. Daniels and four other men could be found at the Econo Lodge. He discovered from the night manager of the Econo Lodge that room 129 was registered to a woman named T.Y. and room 143 was registered to another woman named A.W. The manager also told Officer Bremenour that a man from Cleveland previously rented the rooms, but the registrations were then switched to T.Y. and A.W.

{¶13} Officers conducted surveillance on rooms 129 and 143 while search warrants were sought and obtained. Officer Bremenour testified that he observed a black male wearing a hoodie and a black, leather jacket walking from room 143 to room 129. Based on the jacket and hoodie, Officer Bremenour believed this was the police's "target individual" from a drug transaction that occurred a week or two ago at Walmart. Officer McConnell testified that he observed a female leave room 143. He testified that he knew her well and "[i]f she was there, there was drug activity

taking place." He followed her to a known drug house in the city, but soon lost interest and returned to the Econo Lodge to continue his surveillance. He saw a black male wearing a leather jacket leave room 143 and meet a white male in a vehicle in front of room 129; both men then entered room 129. Sometime later, the white male left room 129 and went to room 143. The white male then left room 143, entered his vehicle, and left the Econo Lodge parking lot. Officer McConnell testified, "I've been doing this a long time. I mean, that's a drug deal. I knew what I saw." He testified that, in drug trafficking, it is common for people to move between two different fixed locations.

{¶14} Police executed a search warrant, and Officer Bremenour testified that three individuals were in room 129, including Mr. Daniels. He testified that Mr. Daniels "began to taunt us saying that he came out hands up, no drugs. There's no drugs in here. You know, I'm smarter than you * * * comments to that effect." Marijuana, drug paraphernalia, and T.Y.'s identification were found in the motel room, and $295.00 in cash was found in Mr. Daniels' pocket. Officer McConnell testified that he later called the phone number obtained from the earlier traffic stop and verified that it went to one of the cell phones seized from Mr. Daniels.

{¶15} Officer McConnell was involved in the search of room 143, and he testified that three women were found inside: T.Y., T.W., and A.W. Heather Blohm, a Medway intel specialist, also testified that she was involved in executing the search warrant on room 143. She testified that, upon entry, police immediately observed four bags of dope on the floor, ripped pieces of paper, and a scale. One of the women in the room ("A.W.") admitted to having drugs on her person. Officer McConnell also testified that he immediately saw large baggies of suspected heroin on the floor and a digital scale with residue on and around it. He also saw a sheet of paper

with pieces torn off, which he testified is commonly used to package up "bindles" or "folds" of heroin. He also saw drug paraphernalia, including a crack pipe.

{¶16} T.Y. and T.W. both testified at trial. The two women are friends, and both admitted to being recovering drug addicts who received plea deals from the prosecutor in exchange for their truthful testimony at Mr. Daniels' trial. T.Y. testified that she knew Mr. Daniels by the nickname "Quick" and was first introduced to him by a man named Blaze at the Econo Lodge about a month before the events of this case. T.Y. testified that Mr. Daniels sold her some heroin and they engaged in sex together. She stayed with Mr. Daniels for a few days and he took care of her, which meant "giving [her] dope so [she] wasn't sick." She admittedly referred to herself as Mr. Daniels' "girl" or "prostitute." At some point, T.Y. asked Mr. Daniels if he was on Facebook, and he told her he used the made-up name "Mike Leery." T.W. testified that she was in a relationship with a heroin dealer named Blaze, who introduced her to his supplier, Mr. Daniels, otherwise known as "Quick." She testified that, when Blaze was later incarcerated, she returned his drugs and money to Mr. Daniels, who then gave her more heroin to sell for him.

{¶17} T.Y. and T.W. both testified that they went to the Econo Lodge on April 3, 2017, to meet with Mr. Daniels because T.W. owed him some money and he could give them more heroin. T.Y. went to Mr. Daniels' room, but he sent T.W. to another room occupied by A.W. The next day, T.Y. testified that Mr. Daniels made her change the room registration to be under her name, and then had her run bags of heroin back and forth between the two rooms. Neither Mr. Daniels nor T.W. and A.W. wanted the additional bags of heroin in their respective rooms, but Mr. Daniels made T.Y. take it back to the other room. T.W. testified that the women sold heroin out of their motel room that day. At one point, Mr. Daniels made T.W. go to Cleveland to pick up "a sandwich bag full" of heroin from another woman. T.W. testified that although the three women

were selling the heroin, the general understanding was that Mr. Daniels would get the money from the sales. Both T.Y. and T.W. testified that there was no doubt Mr. Daniels was running the show.

{¶18} Erin Miller, a forensic scientist and analyst at the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified as to the testing procedures she used while analyzing the drugs seized in this case. She also testified as to the results of those tests, and her report was entered into evidence. Four separate bags contained the following amounts of heroin, fentanyl, and carfentanil: 10.88 grams; 9.93 grams; 0.78 grams; and 7.95 grams. Another bag contained 0.11 grams of cocaine. Two paper folds contained the following amounts of heroin and fentanyl: less than 0.10 grams; and .11 grams. Another paper fold contained 0.89 grams of heroin, fentanyl, and carfentanil.

{¶19} Captain James Richards of the Wayne County Sheriff's Office testified that he is in charge of operations at the Wayne County Jail. He testified that inmates are given a booking ID number, which they must use to access the phones and make calls from the jail, which are recorded. One of Mr. Daniels' recorded jail calls was played during Captain Richards' testimony, in which Mr. Daniels actually refers to himself as both "Quick" and "Charles Daniels." In another recorded jail call played at trial, Mr. Daniels speaks to a woman who calls him "Quick." In a third call played for the jury, Mr. Daniels says one of the girls who was at the hotel is a "rat." He calls "[his] boy" Blaze over to the phone to confirm what he heard, and Blaze says, "She talkin' 'bout he ain't gonna look out for me. I'm gonna put everything on him." Mr. Daniels then continues to rant about this woman being a rat and says, "B***h, carry your own mother****in' weight" and "You got to carry your own weight in this game if you doin' somethin'."

{¶20} Mr. Daniels also argues the evidence presented was unsupported or uncorroborated by further evidence of his involvement in drug trafficking and the testimony of T.Y. and T.W. was

"extorted" in exchange for plea deals, but these arguments challenge the weight of the evidence presented, not the sufficiency of the State's evidence. As such, we decline to address them under this assignment of error.

{¶21} He further argues that the amount of heroin in the bag weighing 10.88 grams did not exceed ten grams because the baggies and packaging materials added extra weight, which then enhanced his offenses to felonies of the second degree. Mr. Daniels directs us to no evidence in the record as to the actual weight of any baggies or packaging materials weighed, and we decline to speculate as to the weight of such materials. *See State v. Spencer*, 4th Dist. Scioto No. 15CA3718, 2017-Ohio-456, ¶ 47. Moreover, we note that the BCI report entered into evidence plainly finds the total weight of each bag and fold of drugs to be plus or minus 0.04 grams, allowing for a slight deviation in actual weight. Even assuming arguendo that Mr. Daniels' argument has some merit, he only challenges the weight of a single bag of drugs seized, which weighed 10.88 grams. Three other bags and three folds of drugs were also seized, which raised the total weight well beyond the ten-gram minimum required for second-degree felonies. *See State v. White*, 4th Dist. Scioto No. 16CA3747, 2017-Ohio-8087, ¶ 28; *State v. Mathis*, 9th Dist. Summit No. 23507, 2007-Ohio-2345, ¶ 10.

{¶22} After viewing the evidence in a light most favorable to the prosecution, this Court concludes that the State presented sufficient evidence, if believed, to establish that Mr. Daniels committed the offenses of trafficking in heroin, aggravated trafficking in drugs (fentanyl), possession of heroin, aggravated possession of drugs (fentanyl), and illegal use or possession of drug paraphernalia. Although the evidence showed that Mr. Daniels carefully attempted to insulate himself from any culpability, it was sufficient to establish that he was, at the very least, complicit in the commission of these crimes. Based on our review of the record and the evidence presented

at trial, we conclude that a rational trier of fact could have reasonably determined that all of the elements of each offense were proven beyond a reasonable doubt. *See Jenks* at paragraph two of the syllabus.

{¶23} Mr. Daniels' fourth and eighth assignments of error are overruled.

**ASSIGNMENT OF ERROR FIVE**

MANIFEST WEIGHT OF THE EVIDENCE: CAN THE VERDICT BE ALLOWED TO STAND WHEN THE STATE DID NOT MEET THE BURDEN OF PROOF NEEDED TO RENDER THE CONVICTION(S)?

{¶24} In his fifth assignment of error, Mr. Daniels argues that his convictions were against the manifest weight of the evidence. We disagree.

{¶25} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶26} Mr. Daniels presented no evidence at trial. He argues on appeal that there was no evidence of him engaging in any drug trafficking at the Econo Lodge, but this argument sounds in sufficiency, not weight. *See State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-

Ohio-6242, ¶ 20 ("[S]ufficiency and manifest weight are two separate, legally distinct arguments."). We have already determined above that the State presented sufficient evidence at trial to support Mr. Daniels' drug trafficking convictions, and we need not engage in that analysis again.

{¶27} Mr. Daniels also challenges T.Y. and T.W.'s credibility as witnesses, arguing that they exchanged their testimony for their freedom and their testimony was not corroborated by any other evidence. But, corroboration, or lack thereof, of a witness' narration of events is a factual determination for the jurors. *See State v. Bowens*, 9th Dist. Lorain No. 3285, 1982 WL 5007, *1 (May 19, 1982). *See also State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus ("'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'"). The two women testified under oath at trial, and the jury was fully aware of the plea deals each negotiated with the prosecutor to testify truthfully at Mr. Daniels' trial. The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of their proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. The jury chose to believe the State's theory of the case as well as its witnesses, and "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶28} Mr. Daniels makes some additional arguments as well, but we decline to address them because they do not challenge the manifest weight of the evidence, which is his stated assignment of error. *See, e.g., State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-

Ohio-9299, ¶ 18 (stating that an appellant's captioned assignment of error provides us with a roadmap on appeal and directs our analysis). First, he argues that the search warrant was improper and void, and the evidence obtained therefrom should have been excluded. He then claims that the State intentionally withheld evidence such as Facebook photos and phone records which would have exonerated him. "This Court will not address arguments that fall outside the scope of an appellant's captioned assignment of error." *Id.*

{¶29} Accordingly, upon review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Daniels has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶30} Mr. Daniels' fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

ILLEGAL SEARCH & SEIZURE[:] CAN THE STATE BE PERMITTED TO UNLAWFULLY OBTAIN A WARRANT AND SEARCH MOTEL ROOMS BASED ON SUSPICION AND GUESS-WORK OF DRUG ACTIVITY OCCUR[R]ING?

{¶31} In his second assignment of error, Mr. Daniels argues that the police obtained a search warrant not based on probable cause, but instead merely on suspicion and guess-work. Consequently, he argues that all evidence obtained from rooms 129 and 143 at the Econo Lodge should have been excluded. We disagree.

{¶32} "An argument that a court must not consider a piece of evidence because the state obtained it pursuant to an invalid warrant is a suppression-based argument." *State v. Raber*, 9th Dist. Wayne No. 09CA0065, 2010-Ohio-4066, ¶ 26. Mr. Daniels never filed a pretrial motion to suppress at the trial court level in this case. *See* Crim.R. 12(C)(3) (requiring parties to raise, prior

to trial, motions to suppress on the ground that evidence was illegally obtained). The failure to file a motion to suppress prior to trial constitutes waiver of any objection to the admissibility of the evidence. *State v. Taylor*, 9th Dist. Summit No. 22882, 2006-Ohio-2041, ¶ 17, citing Crim.R. 12(H). "Even if we treat [Mr. Daniels'] failure to file a motion to suppress as mere forfeiture of the issue rather than waiver, as stated in Crim.R. 12(H), he is limited to arguing plain error." *State v. Reives-Bey*, 9th Dist. Summit No. 25138, 2011-Ohio-1778, ¶ 10. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Mr. Daniels has not argued plain error on appeal, however, and "[t]his Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it." *State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 9.

{¶33} Mr. Daniels' second assignment of error is overruled.

## ASSIGNMENT OF ERROR SIX

ALLIED OFFENSES[:] * * * TRIAL COURT IMPOSED CONCURRENT SENTENCES ON DETERMIN[E]D ALLIED OFFENSES OF THE CONVICTIONS. CAN A VOID SENTENCE BE ALLOWED TO STAND?

{¶34} In his sixth assignment of error, Mr. Daniels argues that all of his convictions are allied offenses of similar import, and the trial court erred in imposing concurrent sentences on all counts, resulting in a void sentence. We disagree.

{¶35} An appellate court's standard for review of a felony sentence is not whether the sentencing court abused its discretion. R.C. 2953.08(G)(2). The Supreme Court of Ohio has held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that

measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶36} The Supreme Court of Ohio has stated that "when the trial court concludes that the accused has in fact been found guilty of allied offenses of similar import, imposing separate sentences for those offenses is contrary to law and the sentences are void on the face of the judgment of conviction." *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶ 29. Still, "a trial court's failure to merge offenses for purposes of sentencing, where the court has not previously found the offenses to be allied (either expressly or by merely failing to make such a finding), does not result in a void sentence, but rather a voidable one * * *." *In re D.M.*, 9th Dist. Medina No. 16CA0019-M, 2017-Ohio-232, ¶ 9, citing *Williams* at ¶ 23, 26. The trial court here did not make a finding as to whether Mr. Daniels' offenses were allied and, therefore, Mr. Daniels cannot demonstrate that his sentence is void, regardless of whether the offenses are allied. *See State v. Fields*, 9th Dist. Summit No. 28667, 2018-Ohio-1605, ¶ 13.

{¶37} Moreover, our review of the sentencing transcript reveals that Mr. Daniels never objected or sought to have any of his convictions merged as allied offenses at sentencing. This Court has stated that a defendant's failure to object or make any allied offenses argument at sentencing forfeits all but plain error. *State v. May*, 9th Dist. Lorain No. 17CA011204, 2018-Ohio-2996, ¶ 9. Mr. Daniels has not argued plain error on appeal and, once again, we "will not sua sponte fashion an unraised plain error argument and then address it." *Thomas* at ¶ 9.

{¶38} Mr. Daniels' sixth assignment of error is overruled.

**ASSIGNMENT OF ERROR SEVEN**

R.C. 2929.14(B) & (C) REQUIRE[] TRIAL COURT[S] TO MAKE FINDINGS ON THE RECORD TO OVERCOME THE PRESUMPTION FOR THE

SHORTEST TERM AND TO IMPOSE THE LONGEST TERM. CAN [THE] TRIAL COURT IMPOSE THE MAXIMUM TERM OF 8-YEARS WITHOUT ANY FINDING?

{¶39} In his seventh assignment of error, Mr. Daniels argues that the trial court failed to make the requisite findings to permit the imposition of a maximum sentence or a sentence greater than the minimum sentence allowable. We disagree.

{¶40} Once again, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, at ¶ 1; R.C. 2953.08(G)(2).

{¶41} The Supreme Court of Ohio has stated that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. The *Foster* Court specifically targeted and excised R.C. 2929.14(B) and (C) as unconstitutional for requiring judicial fact-finding. *See id.* at paragraph one of the syllabus; *State v. Windham*, 9th Dist. Wayne No. 05CA0033, 2006-Ohio-1544, ¶ 6. Because these findings are no longer required under the law, Mr. Daniels' argument must fail.

{¶42} Mr. Daniels' seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR ONE

PROSECUTOR MISCONDUCT[:] CAN A PROSECUTOR BE ALLOWED TO VIOLATE THE OHIO REVISED CODE AND CONSTITUTIONAL GUARANTEES IN ORDER TO OBTAIN A CONVICTION?

{¶43} In his first assignment of error, Mr. Daniels argues that the prosecutor engaged in misconduct. We disagree.

{¶44} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22. "'[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial.'" *Id.*, quoting *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *Id.* "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶45} Mr. Daniels argues that the prosecutor did not maintain fairness due to a "false charge, excessive bond[,] and intentional non-development of readily available FACTUAL DOCUMENT evidence to establish the circumstantial evidence case with extorted testimony * * *." He contends that T.Y. and T.W. perjured themselves by presenting false testimony—testimony which was "extorted" by the prosecutor in exchange for plea deals—and that the prosecutor failed to correct their perjured testimony. He also claims the prosecutor possessed "non-developed FACTUAL, MATERIAL DOCUMENT [evidence]," to wit: a Facebook photo of Michael "Quick" Leery and a lack of cell phone records from Mr. Daniels' phone, which evidence established that he was not the drug dealer known as "Quick" who rented Econo Lodge rooms 129 and 143.

{¶46} The trial court set Mr. Daniels' bond, not the prosecutor. Moreover, Mr. Daniels has neither cited to the record in accordance with App.R.16(A)(7) nor demonstrated that the prosecutor brought "false" charges against him, was aware of any perjury committed by its witnesses, or withheld any exculpatory evidence. He has therefore not revealed any improper

actions by the prosecutor or demonstrated any resulting prejudice to his substantial rights, which denied him a fair trial. *See Moreland* at ¶ 22.

{¶47} Mr. Daniels' first assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

INEFFECTIVE ASSISTANCE OF COUNSEL: CAN A DEFENDANT BE CONVICTED AT TRIAL WITHOUT THE ASSISTANCE OF EFFECTIVE ASSISTANCE OF COUNSEL?

{¶48} In his third assignment of error, Mr. Daniels argues that he received ineffective assistance of counsel. We disagree.

{¶49} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz,* 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶50} Mr. Daniels asserts that his trial counsel provided ineffective assistance by: (1) failing to file a motion to suppress; (2) failing to develop any "readily available defense factual

evidence that would exonerate [him]"; (3) failing to object to the admission of his prior criminal record; (4) failing to attack the illegal search and seizure of evidence; (5) failing to file any motions regarding his false charges and excessive bond; and (6) failing to request a lesser included offense jury instruction.

{¶51} Apart from simply listing what his trial counsel allegedly failed to do, Mr. Daniels offers no argument in support of these speculative assertions. *See* App.R. 16(A)(7). He has therefore not established that his counsel's performance was deficient or that the deficient performance prejudiced his defense. *See Strickland* at 687.

{¶52} Mr. Daniels' third assignment of error is overruled.

III.

{¶53} Mr. Daniels' assignments of error are all overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT


CARR, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

CHARLES DANIELS, pro se, Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.